UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

METSO MINERALS CANADA INC. and METSO MINERALS INDUSTRIES, INC.,

Petitioners,

v.

ARCELORMITTAL EXPLOITATION MINIÈRE CANADA and ARCELORMITTAL CANADA INC.,

Respondents.

Case No. 1:19-cv-3379

**PETITION AND MOTION TO CONFIRM, RECOGNIZE, AND ENFORCE ARBITRATION AWARD**

Petitioners, Metso Minerals Canada, Inc. ("Metso Canada") and Metso Minerals Industries, Inc. ("Metso Minerals") (collectively "Metso"), by and through their undersigned counsel, hereby petition and move this Court for an order and judgment confirming, recognizing, and enforcing an arbitral award rendered against ArcelorMittal Exploitation Minière and ArcelorMittal Canada, Inc. (collectively "ArcelorMittal"). This petition and motion ("Petition") is supported by the accompanying Memorandum of Law and the Declaration of Michael Evan Jaffe dated April 16, 2019, with exhibits. In support of this Petition, Metso respectfully states as follows:

**Nature of Action**

1. Metso brings this proceeding under Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207, and Article III of the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention"), to confirm, recognize, and enforce a final, binding arbitration award

issued in New York, New York, on March 20, 2019 (the "Final Award"),[1] by an arbitral tribunal (the "Tribunal") duly constituted under the auspices of the International Chamber of Commerce ("ICC") in *ArcelorMittal Exploitation Minière Canada and ArcelorMittal Canada Inc. v. Metso Minerals Canada Inc. and Metso Minerals Industries, Inc.*, Case No. 22034/RD/MK (the "Arbitration"). Jaffe Decl. ¶ 6 & Ex. E.

2. Petitions under the FAA must be "made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6. The policy behind this "simplified procedure" is "to expedite judicial treatment of matters pertaining to arbitration." *World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 366 (2d Cir. 1965).

3. Metso respectfully petitions and moves the Court to confirm, recognize, and enforce the Final Award and incorporate its terms into a judgment in favor of Metso. Metso also seeks to recover the fees and expenses incurred in confirming the Final Award, along with further relief as this Court may find just and proper.

**Parties**

4. Petitioner Metso Minerals Canada, Inc. is a corporation formed under the laws of Canada, with its head office at 161 Bridge Street West, Unit 6, Belleville, Ontario K8P 1K2, Canada. Petitioner Metso Minerals Industries, Inc. is a corporation formed under the laws of the State of Delaware, with its principal place of business at 20965 Crossroads Circle, Waukesha, Wisconsin, 53186.

5. Respondent ArcelorMittal Exploitation Minière Canada ("ArcelorMittal Mines") is a general partnership formed under the laws of Quebec, Canada, with its principal place of

[1] The ICC transmitted a copy of the Final Award to the parties on March 20, 2019. Jaffe Decl. ¶ 10.

business at 1801 McGill College Avenue, Suite 1400, Montreal, Quebec H3A 2N4, Canada. Respondent ArcelorMittal Canada Inc. ("ArcelorMittal Canada") is a corporation formed under the laws of Quebec, Canada, with its place of business at 1801 McGill College Avenue, Suite 1400, Montreal, Quebec H3A 2N4, Canada.

**Jurisdiction and Venue**

6. The Arbitration was seated, and the Final Award was rendered, in New York City, New York. Jaffe Decl. ¶ 8.

7. This Court has subject matter jurisdiction under 9 U.S.C. § 203, which provides that "[D]istrict courts of the United States . . . have original jurisdiction over" any "action or proceeding falling under the [New York] Convention." This proceeding "fall[s] under the Convention" because the Final Award arises out of a relationship involving one or more non-U.S. parties; because the relationship involves property located in Canada; and because the relationship has some other reasonable relation with one or more foreign states. *See* 9 U.S.C. § 202 (providing that an "arbitral award arising out of a legal relationship . . . which is considered commercial . . . falls under the Convention" unless such relationship was "entirely between citizens of the United States," and even then, such a relationship between U.S. parties falls under the Convention so long as "that relationship involved property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states").

8. Venue is proper in this district under 9 U.S.C. § 204 because the arbitration clause at issue (described below) specifies New York as the place of arbitration, and ArcelorMittal consented to arbitration in this district. *See* 9 U.S.C. § 204 (an "action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought . . . in

such court for the district . . . which embraces the place designated in the agreement as the place of arbitration if such place is within the United States"); *see also Doctor's Assocs. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction.").

9. This Court has personal jurisdiction over ArcelorMittal because ArcelorMittal consented to arbitrate and did arbitrate in New York. 9 U.S.C. § 9 (upon service of an application to confirm on the adverse party, "the court [of the district where the award was made] shall have jurisdiction of such party as though he had appeared generally in the proceeding"); *see also* Federal Rule of Civil Procedure 4(k); *In re Coudert Bros. LLP*, 2017 WL 1944162, at *4 (S.D.N.Y. May 10, 2017) ("By consenting to arbitration in New York, Defendant has agreed to be amenable to the personal jurisdiction of this Court.") (citing *Doctor's Assocs.*, 85 F.3d at 983).

## Background

### *The Contracts and the Alleged Breaches*

10. The Final Award results from a dispute between Metso and ArcelorMittal under two contracts: a contract for the purchase of an autogenous grinding mill entered into between Metso Canada and ArcelorMittal Mines dated February 21, 2011 (the "Mill Contract"); and a purchase order for eight vibratory feeders entered into between Metso Minerals and ArcelorMittal on August 19, 2011 (the "Feeders Contract"). Both contracts required mandatory arbitration of disputes arising thereunder. *See* Jaffe Decl. Ex. A (Mill Contract Excerpts) App'x 17, § 42 (arbitration clause); Jaffe Decl. Ex. B (Feeders Contract) at 3 (incorporating by reference the "AMMC GCCP," or ArcelorMittal Minière Canada General Conditions of Capital

Purchase, which are reproduced at Appendix 17 of the Mill Contract); *see also* Jaffe Decl. Ex. C (ArcelorMittal's demand for arbitration) at 5–6 (citing these clauses as the bases for the demand).

11. With regard to the Mill Contract: ArcelorMittal issued requests for quotations to five companies in the business of providing specialized equipment that is part of the process for extracting iron from iron ore in connection with ArcelorMittal's plan to add a seventh production line, including a new autogenous grinding mill, to its open-pit mine at Mont-Wright, Quebec. Jaffe Decl. Ex. G (Final Award) at 25. Following ArcelorMittal's August 2010 request for quotations for an autogenous grinding mill ("AG mill"), ArcelorMittal received bids from Metso Canada and four other companies. *Id.* Metso Canada's bid won. Metso Canada and ArcelorMittal Mines executed their Contract for an autogenous mill priced at USD 12,593,333.00 on February 21, 2011. *Id.*

12. In May of the following year, Metso Canada delivered the mill to the Mont-Wright mining complex. After the ramp-up period ended in December 2013, ArcelorMittal began to claim that the autogenous mill was affected by a latent defect and that the mill fell short of meeting contractual design criteria.

13. With regard to the Feeders Contract: ArcelorMittal solicited proposals for vibrating feeders that would also be a part of the seventh production line at Mont-Wright. Metso Minerals was the successful offeror.

14. Metso Minerals delivered the feeders to ArcelorMittal's facility in the summer of 2012, and they were installed approximately one year later.

15. After installation, the feeders began to break down due to the manner in which they were being used. ArcelorMittal claimed Metso Minerals had provided defective feeders in

breach of the Feeders Contract. ArcelorMittal ultimately abandoned this claim during the arbitration proceedings. Jaffe Decl. Ex. G at 22, ¶ 146.

***The Agreement to Arbitrate***

16. As part of their longstanding business relationship, the parties agreed to certain "General Conditions for Capital Purchase" ("GCCP"). *See* Jaffe Decl. Ex. A at App'x 17. The GCCP require mandatory arbitration in New York for disputes governed by United States or Canadian law. *Id.* § 42. The clause reads in pertinent part:

> 42.1 Any dispute between the BUYER and the CONTRACTOR arising out of or in connection with this CONTRACT which cannot be settled by mutual agreement shall be settled finally under the Rules of Arbitration of the International Chamber of Commerce by an Arbitral Tribunal appointed in accordance with the said Rules.
>
> 42.2 The place of arbitration will be in:
>
> 42.2.1 New York, USA, where the applicable law of the CONTRACT is Canadian or American;
>
> 42.2.2 Zurich, Switzerland where the applicable law of the CONTRACT is that of a country of the European union; and
>
> 42.2.3 Johannesburg, South Africa where the applicable law of the CONTRACT is South Africa.
>
> ***
>
> 42.3 The arbitration shall be conducted in the English language.
>
> 42.4 The arbitration award shall be final and binding on the PARTIES and maybe enforced in any court having jurisdiction.

17. The GCCP were made an appendix to and expressly incorporated into the Mill Contract. Jaffe Decl. Ex. A at App'x 17.

18. The GCCP were incorporated by reference into the Feeders Contract. Jaffe Decl. Ex. B at 3.

19. Section 41 of the GCCP states that the law that governs disputes is the law of the site where performance is contemplated:

> The GENERAL CONDITIONS and each CONTRACT shall exclusively be governed by and construed in accordance with the LAWS of the place where the concerned SITE is located provided that the country where the SITE is located is in Canada [or one of several other countries] ….

Jaffe Decl. Ex. A at App'x 17 § 41.

20. Section 10 of the Mill Contract further specified that "this contract and the rights granted or arising hereunder, shall be governed by, and interpreted in accordance with the laws applicable in the province of Quebec." Jaffe Decl. Ex. A at 2, § 10.

***ArcelorMittal Commenced Arbitration Proceedings***

21. ArcelorMittal filed with the ICC a request for arbitration dated June 14, 2016, and the ICC acknowledged receipt on June 17, 2016 (the "Arbitration"). Jaffe Decl. ¶ 5 & Exs. C & D. ArcelorMittal asserted breach of contract and related claims for, *inter alia*, alleged defects in the AG mill and the vibrating feeders. Jaffe Decl. Ex. C. at 8–15. ArcelorMittal requested an award of compensation plus interest, other relief that the Tribunal considered proper, and the legal fees and costs incurred in the arbitral proceedings. Jaffe Decl. Ex. G at 41, ¶ 229.

22. The Tribunal as finally constituted in accordance with the Rules of Arbitration of the International Chamber of Commerce ("ICC Rules"), consisted of two co-arbitrators, The Honorable Louise Otis (nominated by ArcelorMittal) and Jesse B. Grove, III (nominated by Metso), and Yves Derains, who was jointly nominated by the parties to serve as President of the Tribunal. Jaffe Decl. ¶ 6 & Ex. E.

23. Pursuant to the Tribunal's timetable, the parties exchanged briefing (accompanied by witness statements, expert reports, and exhibits) and engaged in the disclosure of documents. The initial Case Management Conference was held on December 14, 2016, by telephone. The

parties made written submissions on October 3, 2017, February 20, 2018, May 7, 2018, and October 1, 2018 (by ArcelorMittal); and on October 19, 2017, December 11, 2017, April 24, 2018, May 3, 2018, October 1, 2018, and October 22, 2018 (by Metso). Jaffe Decl. ¶ 7.

24. On May 9, 2018, ArcelorMittal withdrew its claim as to the vibratory feeders and agreed to bear Metso's reasonable costs incurred in defending the claim. Jaffe Decl. Ex. G § 154.

25. The Tribunal convened oral hearings from June 4 to June 13, 2018, at the New York International Arbitration Center in New York. Jaffe Decl. ¶ 8. At the conclusion of the hearing, President Derains stated: "Thank you very much. And as I always say, have you something to criticize on the conduct of this hearing. Because if you had, maybe we could correct it." Counsel for ArcelorMittal responded: "No issue on our side, sir." Metso's counsel concurred. Jaffe Decl. ¶ 8 & Ex. F (Hrg. Tr. excerpts) at 1559–60.

26. The parties were represented by counsel throughout the Arbitration. ArcelorMittal was represented by attorneys from the law firms Miller Thomson LLP (Montreal) and Herbert Smith Freehills LLP (London); Metso was represented by Langlois Lawyers LLP (Montreal) and Pillsbury Winthrop Shaw Pittman LLP (Washington, D.C.). Jaffe Decl. Ex. G at 1.

***The Final Award***

27. The Tribunal rendered its Final Award on March 20, 2019, in accordance with the ICC Rules. Jaffe Decl. ¶ 9 & Ex. G. The majority of the Tribunal rejected ArcelorMittal's claims, finding that Metso Canada had not provided a defective mill or otherwise breached its obligations. Jaffe Decl. Ex. G at § 304. The Honorable Louise Otis dissented in part. Jaffe Decl. Ex. H.

28. The Majority of the Tribunal accordingly ordered ArcelorMittal:

   a. To bear 80% of the fees and expenses of the Tribunal and of the ICC's administrative expenses fixed by the ICC International Court of Arbitration at USD 863,000, meaning that ArcelorMittal is to pay Metso USD 258,900 already remitted by Metso.

   b. To bear 80% of Metso's reasonable legal costs as determined by the Tribunal, plus the full amount relating to the Vibrating Feeders Claim, *i.e.*, USD 4,503,797.32.

Jaffe Decl. ¶ 11 & Ex. G at 78.

29. The Final Award has not been set aside or suspected by a competent authority of the country in which, or under the law of which, the Final Award was made.

30. On March 28, 2019, Metso commenced proceedings in the Superior Court (Commercial Chamber) in Montreal, Canada for the recognition and enforcement of the Final Award. The proceedings are styled and denominated *Metso Minerals Canada Inc. & Metso Minerals Industries Inc. v. ArcelorMittal Exploitation Minière Canada & ArcelorMittal Canada Inc.*, No. 500-11-056231-190. Jaffe Decl. ¶ 13 & Ex. I.

31. In response to Metso's application, ArcelorMittal claimed that the application was premature in that the time for ArcelorMittal to challenge the Final Award in an appropriate court in New York, should it elect to do so, had not lapsed.

32. ArcelorMittal has not paid Metso any portion of the Final Award.

33. This Petition is timely, because it was brought less than three years after the Final Award was issued on March 20, 2019.

**COUNT I**

**Confirmation of Award Under 9 U.S.C. § 207**

34. Metso incorporates each and every allegation in the preceding paragraphs as if set forth fully herein.

35. The United States is a contracting party to the New York Convention, as is Canada.[2]

36. The Final Award is governed by the New York Convention (made applicable in this proceeding by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201, *et seq.*), because the Final Award arises out of commercial contracts between Metso Canada and ArcelorMittal, neither of whom is a citizen of the United States and between Metso Minerals and ArcelorMittal, where ArcelorMittal is not a citizen of the United States. Both contracts relate to a project in Quebec Province, Canada, and envisaged performance (delivery of the contracted-for goods) in Canada. *See* 9 U.S.C. § 202.

37. Article IV of the New York Convention provides that a party applying for recognition and enforcement of an award, such as Metso here, "shall, at the time of the application, supply: (a) [t]he duly authenticated original award or a duly certified copy thereof; [and] (b) [t]he original agreement [to arbitrate] referred to in article II or a duly certified copy thereof." A copy of the Final Award, duly authenticated and transmitted to Metso, is submitted herewith as Exhibit G to the Jaffe Declaration.

---

[2] *See* New York Arbitration Convention, Contracting States, http://www.newyorkconvention.org/countries (last accessed April 12, 2019).

38.     Via the GCCP, which were incorporated into both the Mill Contract and Feeders Contract, Metso and ArcelorMittal agreed to submit all disputes arising thereunder to binding arbitration.

39.     The Final Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C. § 202.

40.     Pursuant to Article 31(3) of the applicable 2012 ICC Rules, the Final Award was made at the place of arbitration, New York, New York, United States of America.

41.     Pursuant to ICC Rules Article 34(6), the Final Award is "binding on the parties." In addition, the GCCP provide that "[t]he arbitration award shall be final and binding upon the PARTIES and may be enforced in any court having jurisdiction."  Jaffe Decl. Ex. A at 158, § 42.4.

42.     The Final Award is therefore final and binding within the meaning of the New York Convention and Chapter 2 of the FAA.

43.     In an action to confirm an award governed by the New York Convention, the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.

44.     For awards governed by the New York Convention rendered in the United States, the domestic provisions of the FAA apply, which provide that a court may vacate an arbitration award only under certain narrow circumstances.  *See* 9 U.S.C. § 10.  A party resisting confirmation or seeking vacatur of an award has the "heavy" burden of proving that one of the enumerated grounds applies.  *See Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007) (party opposing confirmation has the burden to prove that one of the defenses applies and noting that

the "burden is a heavy one, as the showing required to avoid summary confirmance is high") (citation omitted).

45. As explained in the accompanying Memorandum of Law, none of the New York Convention's or the FAA's enumerated grounds for refusing or deferring recognition applies to the Final Award.

46. For the foregoing reasons, Metso is entitled to an order confirming, recognizing, and enforcing the Award pursuant to 9 U.S.C. § 207 and Article III of the New York Convention. Metso respectfully requests the Court to confirm the Final Award by entering judgment in favor of Metso and against ArcelorMittal dismissing with prejudice the claims made by ArcelorMittal against Metso in the Arbitration and awarding Metso judgment against ArcelorMittal in the amount of the Final Award, with interest from the date of the Final Award, March 20, 2019, plus the costs of this proceeding.

**Prayer**

WHEREFORE, Metso respectfully requests:

a. An Order pursuant to 9 U.S.C. § 207 and Article III of the New York Convention confirming, recognizing, and enforcing the Final Award and entering Judgment thereon;

b. A Judgment in favor of Metso and against ArcelorMittal dismissing the claims made by ArcelorMittal against Metso in the Arbitration;

c. A Judgment in favor of Metso and against ArcelorMittal in the amount of USD 258,900 for ArcelorMittal's share of Metso's ICC administrative expenses and Tribunal fees and expenses as provided by the Final Award, plus interest from the date of the Final Award;

d. A Judgement in favor of Metso and against ArcelorMittal for the costs ordered in the Final Award, amounting to USD 4,503,797.32 as provided by the Final Award, plus interest from the date of the Final Award;

e. An award of Metso's costs of this civil proceeding, including reasonable attorneys' fees incurred in bringing this proceeding;

  f. An Order retaining jurisdiction in this Court over the matter for any further proceedings as may be necessary to enforce the Final Award and any further awards or judgments, which may be obtained by Metso against ArcelorMittal; and

  g. Any other relief that this Court, in the interests of justice, deems necessary and proper.

A proposed order is appended hereto.

Dated: April 16, 2019

          Respectfully submitted,

          By: /s/ John Chamberlain

          John Chamberlain
          Michael Evan Jaffe (*pro hac vice forthcoming*)
          Jack McKay (*pro hac vice forthcoming*)
          Clare Cavaliero Pincoski (*pro hac vice forthcoming*)
          David J. Stute (*pro hac vice forthcoming*)
          PILLSBURY WINTHROP SHAW PITTMAN LLP
          1200 17th Street NW
          Washington, D.C. 20036
          (202) 663-8000
          john.chamberlain@pillsburylaw.com
          michael.jaffe@pillsburylaw.com
          jack.mckay@pillsburylaw.com
          clare.pincoski@pillsburylaw.com
          david.stute@pillsburylaw.com

          *Attorneys for Petitioners Metso Minerals Canada, Inc. & Metso Minerals Industries, Inc.*