UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| METSO MINERALS CANADA INC. and METSO MINERALS INDUSTRIES, INC., <br><br> Petitioners, <br><br> v. <br><br> ARCELORMITTAL EXPLOITATION MINIÈRE CANADA and ARCELORMITTAL CANADA INC., <br><br> Respondents. | Case No. 1:19-cv-3379-LAP |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# <u>CROSS-PETITION TO VACATE ARBITRATION AWARD</u>

Thomas E. Riley
A. Robert Dawes
HERBERT SMITH FREEHILLS
NEW YORK LLP
450 Lexington Ave, 14th Floor
New York, New York 10017
Tel:  (917) 542-7600
Fax:  (917) 542-7601
Thomas.Riley@hsf.com
Robert.Dawes@hsf.com

*Attorneys for Respondents
ArcelorMittal Exploitation
Minière Canada s.e.n.c. and
ArcelorMittal Canada Inc.*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................3

I.       The Majority Award Should be Vacated for Manifest Disregard of the Law ..................................................................................................................3

II.      Metso Ignores the Duty to Inform .......................................................................4

III.    Metso Misrepresents the Arbitration Record ..................................................7

IV.    The Majority's Manifest Disregard Was Intentional and Not a Mere Error ..................................................................................................................9

CONCLUSION ......................................................................................................................10

## **TABLE OF AUTHORITIES**

*ABB Inc. v Domtar Inc.,*
  [2007] 3 SCR 461 ............................................................................................... 3, 4, 6

*Banque de Montréal v Bail Ltée,*
  [1992] 2 SCR 554 ......................................................................................... 1, 2, 3, 6, 8

*EB Safe, LLC v. Hurley,*
  No. 1:17-CV-06163 (ALC), 2018 WL 2225003 (S.D.N.Y. May 15, 2018) .................... 4

*Jock v. Sterling Jewelers Inc.,*
  646 F.3d 113 (2d Cir. 2011) ............................................................................................ 4

*Perry v. Kingsland Capital Mgmt. LLC,*
  No. 16 CIV. 4305 (DAB), 2018 WL 1737237 (S.D.N.Y. Mar. 20, 2018) ...................... 4

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,*
  548 F.3d 85 (2d Cir. 2008), rev'd on other grounds, 559 U.S. 662 (2010) ................... 4

*Wallace v. Buttar,*
  378 F.3d 182 (2d Cir. 2004) ............................................................................................ 3

**OTHER AUTHORITIES**

Article 2102 C.C.Q. ............................................................................................... PASSIM

*Braspetro Oil Services Company - Brasoil v. The Management and Implementation*
  *Authority of the Great Man-Made River Project*
  Cour d'Appel [Court of Appeal], July 1, 1999 ................................................................ 9

*Helnan International Hotels A/S and Arab Republic of Egypt (Annulment*
  *Proceeding)*, ICSID Case No. ARB/05/19, dated June 14, 2010 ................................... 9

Respondents ArcelorMittal Exploitation Minière Canada s.e.n.c. and ArcelorMittal Canada Inc. ("ArcelorMittal") respectfully submit this Reply Memorandum of Law in response to the Reply Memorandum of Law in Further Support of Petition to Confirm Arbitration Award and in Opposition to Cross-Petition to Vacate Award, ECF No. 28 ("Metso Reply" or "Reply"), filed by Petitioners Metso Minerals Canada, Inc. and Metso Minerals Industries, Inc. ("Metso").

As explained in its Cross-Petition to Vacate Arbitration Award, ECF No. 25 ("Cross-Petition"), and supporting Memorandum of Law, ECF No. 22, ArcelorMittal respectfully requests that the Court vacate the arbitration award (the "Majority Award") issued in New York, New York on March 20, 2019, by the majority of a three-member tribunal (the "Majority") in the arbitration between Metso and ArcelorMittal (the "Arbitration") conducted under the auspices of the International Chamber of Commerce (the "ICC").

## INTRODUCTION

The Majority Award should be vacated because it intentionally and manifestly disregarded the Duty to Inform developed in *Banque de Montréal v Bail Ltée*, [1992] 2 SCR 554 ("*Bail*")[1] and codified in Article 2102 of the Civil Code of Québec ("Article 2102"). Both Metso and ArcelorMittal consistently and correctly acknowledged throughout the Arbitration that the pre-contractual Duty to Inform under Article 2102 was a separate and independent claim, distinct from its claims for breach of warranty and latent defects, and involving a broader pre-contractual duty. As Metso acknowledged, the Duty to Inform requires that, "*before the contract is entered into* . . . the contractor or the provider of services is bound to provide the client with *any useful information* concerning the nature of the task that he undertakes to perform, the materials used, and time required." Decl., Ex. Q, Metso Post-

---

[1] Declaration of Thomas E. Riley dated May 16, 2019, ECF No. 23 ("Decl."), Ex. T.

1

Hearing Memorial ¶ 21.1 (emphasis added).[2] Metso has also repeatedly acknowledged that the sole, clearly applicable, controlling legal standard by which breach of this obligation is to be judged is the Supreme Court of Canada's test in *Bail,* and so did the Majority.[3]

Metso in its Reply engages in some manifest disregard of its own, contradicting its positions in the Arbitration and ignoring Québec law as explained by its legal expert. The Arbitration record, including Metso's submissions, clearly reflects that the Duty to Inform under Article 2102 constitutes a separate and independent pre-contractual duty pursuant to which ArcelorMittal stated a distinct claim. This was set forth clearly and repeatedly by both parties and their legal experts, as well as in the dissenting opinion by the Hon. Justice Louise Otis, dated March 20, 2019 (Decl. Ex. S, the "Justice Otis Opinion").[4]

Indeed, the Majority specifically acknowledged that both parties described the Duty to Inform *the same way*, and that the Duty was distinct from the disclosure of a defect – *i.e.*, the Majority acknowledged that the parties agreed that the Duty to Inform was a duty to provide ArcelorMittal with "*any useful information*" "*before the contract is entered into*." *Compare* Decl. Ex. R, Majority Award at ¶ 218 (ArcelorMittal's position) *with id.* at ¶ 248 (Metso's position). Despite this acknowledgment, the Majority decided to disregard the Duty to Inform as "meaningless." *Id.* ¶ 294.

To give the illusion that there is a colorable basis for the Majority Award, Metso attempts to paint over the arbitral record. Indeed, in its Reply, Metso only mentions Article 2102 once – and then only when quoting ArcelorMittal. Metso then relies almost entirely on a

---

[2] *See also, e.g.,* Decl., Ex. G, ArcelorMittal Amended Statement of Claim ¶¶ 188-89, 194–196; Decl., Ex. L, ArcelorMittal Statement of Reply ¶¶ 297-98; Decl. Ex. K, Jean-Louis Baudouin, *The Law in Québec Concerning a Number of Contractual Issues*, dated February 13, 2018 ("Baudouin Report") ¶¶ 57-63; Decl., Ex. H, Metso Statement of Defense ¶ 16.4.1; Metso Post-Hearing Memorial ¶ 21.1; Decl. Ex. I, Report of Metso's Expert Witness Professor Nathalie Vézina dated October 12, 2017 ("Vézina Report") ¶ 49.

[3] *See* Decl., Ex. Q, Metso Post-Hearing Memorial ¶ 21.2; Metso Reply at 6; Decl., Ex. R, Majority Award ¶¶ 218 (citing Article 2102 and cross-referencing ArcelorMittal's citation to *Bail* in its Amended Statement of Claim)

[4] *See* Decl., Ex. S, Justice Otis Opinion ¶¶ 33-39, 73 *et seq.*

tortured misinterpretation of *ABB Inc. v Domtar Inc.*, [2007] 3 SCR 461 ("*Domtar*"), ¶ 108. *See* Decl., Ex. U. Metso never articulated this interpretation in the Arbitration, and claims that ArcelorMittal is in effect attempting to challenge the Majority's factual findings regarding the absence of a "defect" in the AG Mill pursuant to the specific contractual criteria agreed to by the parties. As explained below, Metso has mischaracterized *Domtar*, and ArcelorMittal is not asking this Court to reconsider any of the Majority's factual findings in this proceeding. Indeed, that factual finding is irrelevant here, because the principle disregarded by the Majority is independent from any finding of a defect.

ArcelorMittal neither seeks *de novo* review, nor (in contrast to Metso) presents new arguments of Québec law. Instead, it asks the Court to accept the arbitral record, including the parties' legal positions, on its face, and to vacate the Majority Award for manifest disregard of the Duty to Inform under Article 2102 and *Bail*. Metso closes its Reply with the half-hearted argument that the Majority's disregard of the Duty to Inform was merely an error of Québec law. But the Majority Award goes significantly farther. It intentionally disregarded the Duty to Inform as a "meaningless" "debate." The Majority Award reflects a rare instance of arbitral manifest disregard of the law, and should be vacated.

## ARGUMENT

### I. The Majority Award Should be Vacated for Manifest Disregard of the Law

The Court should vacate the Majority Award because it manifestly disregards the Duty to Inform under Article 2102 and *Bail*, even though the parties had thoroughly briefed it in the Arbitration and agreed on its existence, relevance, and applicability to the dispute.

Given Metso's shifting legal argument, ArcelorMittal is constrained to repeat that vacatur of an arbitral award is "not an occasion for *de novo* review" of the tribunal's legal reasoning. *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). It is Metso – not ArcelorMittal – which is seeking to re-litigate the Arbitration, relying on a new and tortured

3

interpretation of *Domtar*. Metso's new arguments are clearly erroneous, as explained in more detail in Section II. More importantly, they are also inapposite, because those arguments are contradicted by the Arbitration record.

The parties largely agree on the standard for vacatur for manifest disregard of the law. It is proper where: (1) "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable," and (2) "the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *EB Safe, LLC v. Hurley*, No. 1:17-CV-06163 (ALC), 2018 WL 2225003, at *2 (S.D.N.Y. May 15, 2018) (quoting *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011)).[5] As ArcelorMittal has explained in its prior submissions,[6] all of these elements are satisfied here. Metso's arguments – addressed below – do not alter this conclusion.

## II.    Metso Ignores the Duty to Inform

Metso points out that "ArcelorMittal's manifest disregard argument presupposes that a duty to inform existed even though the Majority found that Metso's AG Mill was not defective." Metso Reply at 8. Yes, that is ArcelorMittal's argument – and it is also clear and explicit Québec law, as set forth by both parties and Metso's own expert in the Arbitration. This is especially so in the case of a contract of enterprise, as Metso's own expert stated. Decl. Ex. I, Vézina Report ¶ 49.

According to Metso, because the AG Mill "was not defective", "there was therefore no information about which Metso needed to inform ArcelorMittal." Metso Reply at 7. This new argument is not only an incorrect representation of Québec law but also contradicts the

---

[5] Courts in the Second Circuit also consider "whether the law was in fact improperly applied, leading to an erroneous outcome." *Perry v. Kingsland Capital Mgmt. LLC*, No. 16 CIV. 4305 (DAB), 2018 WL 1737237, at *3 (S.D.N.Y. Mar. 20, 2018) (citing *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 93 (2d Cir. 2008), *rev'd on other grounds*, 559 U.S. 662 (2010)).

[6] *See* ArcelorMittal, Memorandum of Law in Opposition to Petition to Confirm Arbitration Award and in Support of Cross-Petition to Vacate Award ("ArcelorMittal Opposition"), ECF No. 22 at 7-19.

principle accepted by Metso that the Duty to Inform is a distinct, pre-contractual, statutory duty with a broader scope than a claim based on defect. *See* Decl., Ex. H, Metso Statement of Defense ¶ 16.4.1 (acknowledging that prior to the formation of the AG Mill Contract and throughout its performance, Metso was bound to provide ArcelorMittal "*with any useful information*" concerning the nature of the task that Metso undertook to perform). In addition to the fact that Metso's argument is inconsistent with its prior legal position, ArcelorMittal's claim based upon the Duty to Inform was based on evidence that Metso failed to inform ArcelorMittal concerning the adequacy of Metso's design, including the fact that the design was unprecedented and that Metso had identified a series of undisclosed risks with its proposed design. *See* Cross-Petition, ECF No. 25, ¶ 15.

Moreover, it is illogical to argue, as Metso does, that a *pre-contractual* Duty to Inform of "any useful information" could be negated by the lack of defect according to the specifications *later* reflected in the contract itself.[7] The very point of the Duty to Inform was to allow ArcelorMittal to consider its full range of options – as Metso's own legal expert, Professor Nathalie Vézina, stated (and as ArcelorMittal's witnesses testified). Referring specifically to a contract of enterprise, Prof. Vézina described the duty in even more expansive terms, stating that the Duty requires that a "contractor must provide the client with information to enable the latter to *make informed choices*. This obligation, which exists at the time of the formation of the contract, is also present at the time of performance. . . ." *See* Decl. Ex. I, Vézina Report ¶ 49 (emphasis added). Indeed, Prof. Vézina expressly stated that in a contract for enterprise, the Duty to Inform "takes a different form" than in a contract for sale. *Id.*

---

[7] In the Arbitration, Metso defined "defect" exclusively by reference to post-contractual standards such as the "technical specifications" and "performance warranties" that were obviously only exist beginning with the execution of the Contract. *See, e.g.*, Decl., Ex. H, Metso Statement of Defense ¶¶ 10.3.3.

5

There is nothing in the arbitral record to contradict these statements of Québec law. And evidence that ArcelorMittal might have chosen an entirely different design, had it been properly informed, was before the tribunal. *See* Cross-Petition, ECF No. 25, ¶ 15. Thus, the separate, pre-contractual Duty to Inform is independent from whether any defect is found. This distinction between a claim for defect and the Duty to Inform is also clear from the Supreme Court of Canada's opinion in *Domtar*, which states:

> Furthermore, the scope of the general duty to inform is *much broader* than that of the disclosure of a latent defect. This duty encompasses *any information that is of decisive importance* for a party to a contract, as Gonthier J. cited in *Bail* (see pp. 586-87). *It is therefore easy to imagine a situation in which a seller would be in breach of the duty even though no latent defect exists.* Decl. Ex. U, *Domtar*, 3 SCR at 461, ¶ 108 (emphasis added).

In its attempt to concoct a legal rationale to support the Majority Award, Metso offers a new and misleading description of *Domtar,* claiming that it stands for the proposition that the Duty to Inform cannot exist without a proven "defect." But as Metso is fully aware, in *Domtar*, the court had determined that a defect did exist, rendering any additional theories of liability redundant and therefore unnecessary to consider. It was in that context that the Supreme Court of Canada noted that the Duty to Inform was subsumed in its determination that there was a defect, and did not need to be considered separately. But Metso has it backwards, claiming that the absence of a defect justifies the Majority's refusal to even consider the pre-contractual Duty to Inform under Article 2102. In fact, as the plain language of *Domtar* makes clear, if there is no defect, the Duty to Inform established in *Bail* still applies because it is not confined to the disclosure of defects, *see Domtar* ¶ 108, quoted above, consistent with the parties' submissions and expert reports in the Arbitration. That is the undisputed legal principle the Majority consciously disregarded.

### III. Metso Misrepresents the Arbitration Record

Metso's Reply also contains various incorrect depictions of the Arbitration record and the Majority Award. For example, Metso claims in its Reply that the Majority "cite[d] *and discuss[ed]* the sections of the Civil Code of Québec and the underlying principles of the duty to inform," citing paragraphs 218 and 248 of the Majority Award. Metso Reply at 5. (emphasis added). Metso's reference to those paragraphs is misleading: those paragraphs are merely examples of the Majority reciting the parties' positions, but there was no "discussion" by the Majority itself of the pre-contractual Duty to Inform under Article 2102. Indeed, Metso in fact correctly acknowledges later in its Reply that the Majority engaged in no such analysis, noting that the Majority actually decided "there was no reason to explore ArcelorMittal's duty to inform contention." Metso Reply at 5.

Metso also claims that ArcelorMittal merely has a "quarrel with the [Majority's] factual finding that the Metso-supplied AG Mill was not defective." Metso Reply at 6. Again, to be clear, ArcelorMittal is not asking this Court to reconsider the Majority's findings as to whether the AG Mill was defective – indeed, it could not do so in this proceeding. That finding by the Majority stemmed from ArcelorMittal's claim that the AG Mill was defective and unfit for the purpose specified in the Contract. *See* Decl. Ex. G, ArcelorMittal Amended Statement of Claim ¶¶ 134-172. This was a separate claim with a different legal basis from ArcelorMittal's claim that Metso breached a pre-contractual duty to inform one's counterparty of "any useful information" under Article 2102 prior to entering into the Contract.

Metso also quibbles with Justice Otis's dissenting opinion, complaining, for example, that it did not state that the Majority Award disregarded any aspect of Québec law. To the extent Metso is faulting Justice Otis for not pointing out that the Majority Award should be vacated under U.S. federal law, that was obviously not her role as an arbitrator and former

7

appellate court judge of Québec.[8] Metso also claims that Justice Otis provides no support for the proposition that the Duty to Inform exists in the absence of a defect. But this is also not correct: *see* Decl. Ex. S, Justice Otis Opinion at ¶¶ 36-39, in which Justice Otis explains each element of the *Bail* test for breach of the Duty to Inform, and then states that "[e]ven in the absence of a defect, as found by the Majority, Metso's duty to inform still applies." *Id.* ¶ 73.

Perhaps Metso's most egregious misrepresentations of the Arbitration record are reserved for ArcelorMittal itself. Metso claims in its Reply that "ArcelorMittal did not argue before the Tribunal, much less offer authority for the proposition that the duty to inform could be breached where the product is not shown to be defective or inadequate."[9] Metso Reply at 10. Metso also claims that "ArcelorMittal insisted that the alleged breach of the duty to inform was directly linked to the alleged defect." *Id*. These are both false. First, ArcelorMittal took the position that it entered into a contract of enterprise with Metso, not a contract of sale – and prevailed on that point. Second, ArcelorMittal argued consistently in the Arbitration that the breach of the Duty to Inform was related to the broader risks inherent in mill design, which were never disclosed by Metso.[10]

Besides all of that, Metso itself – and its own legal expert in the Arbitration – also consistently agreed that the Duty to Inform under Québec law is independent of a claim for defect, and even broader under a contract of enterprise. *See* Decl., Ex. H, Metso Statement of

---

[8] In any event, Justice Otis did point out that "there has been no analysis" of Metso's Duty to Inform in the Majority Award. *See* Decl. Ex. S, Justice Otis Opinion ¶ 110.

[9] The term "inadequate" is an attempted sleight of hand; the Majority Award only addressed whether the mill was "defective," while Justice Otis found that the mill was clearly, at a minimum, "inadequate," and therefore opined that Metso had breached its Duty to Inform ArcelorMittal that the design for the AG Mill was inadequate for its intended purpose.

[10] *See, e.g.*, Decl., Ex. G, ArcelorMittal Amended Statement of Claim ¶ 188 (noting that pursuant to Article 2102 and prior to entering into the contract, "the contractor [has] a duty to provide the client with all information useful and/or relevant to the works or project contemplated in the contract"); *id.* ¶ 194 (underlining Metso's Duty to Inform); *id.* ¶¶ 195–196 (explaining Metso should have informed ArcelorMittal of the risks inherent in its mill design); Decl., Ex. L, ArcelorMittal Statement of Reply ¶¶ 297-98 ("Metso had an obligation to inform ArcelorMittal of any potential issue that could arise from the design elected for the AG Mill . . . ."); Decl., Ex. K, Baudouin Report ¶¶ 57-63.

8

Defense ¶ 16.4.1 ("*ArcelorMittal is correct in stating that both at the time of the formation of the Purchase Contract and throughout its performance, Metso was bound to provide ArcelorMittal with any useful information concerning the nature of the task that Metso undertook to perform, as provided by Article 2102 CCQ and the case law.*") (emphasis added); Decl., Ex. Q, Metso Post-Hearing Memorial ¶ 21.1 (same); Decl., Ex. I, Vézina Report ¶ 49 (in a contract of enterprise, the Duty to Inform "takes a different form," and requires disclosure of information "to enable [the client] to make informed choices").

Notwithstanding Metso's disregard of the Arbitration record, the parties consistently agreed – and the Majority acknowledged – that the Duty to Inform was a distinct obligation to provide any useful information to one's counterparty, prior to entering into a contract.

### IV. The Majority's Manifest Disregard Was Intentional and Not a Mere Error

Finally, Metso claims that the Majority Award did not disregard the Duty to Inform under Article 2102 but rather adopted "a reasoned application of the law." Metso Reply at 2. But the Majority refused to undertake *any* application of the Duty to Inform. This legal analysis would have required assessing the parties' knowledge and expectations before entering into the AG Mill Contract, just as Justice Otis did. *See* Decl., Ex. S, Justice Otis Opinion ¶¶ 45-118. But because it refused to apply the proper legal standard, this analysis is conspicuously absent from the Majority's Award. Instead, the Majority explicitly disregarded the Duty to Inform as a "meaningless" "debate".[11]

---

[11] Decl., Ex. R, Majority Award ¶ 294. Metso also implies that the Court should defer to the Majority Award because Arbitrator Yves Derains is experienced and "widely recognized," and the ICC approved the Award. (ECF No. 28 at 2.) No arbitrator is immune from scrutiny, including Mr. Derains. *See, e.g.*, Second Declaration of Thomas E. Riley dated June 7, 2019 ("Second Decl.") Ex. GG, *Braspetro Oil Services Company - Brasoil v. The Management and Implementation Authority of the Great Man-Made River Project*, Cour d'Appel [Court of Appeal], July 1, 1999 (setting aside ICC award of co-arbitrator Derains); Second Decl. Ex. HH, *Helnan International Hotels A/S and Arab Republic of Egypt (Annulment Proceeding)*, ICSID Case No. ARB/05/19, dated June 14, 2010 (partially annulling award of Mr. Derains, Chairman, as the tribunal had failed to "observe . . . clear requirements" and "manifestly

Indeed, the Majority's determination that the AG Mill Contract was a contract for enterprise, not a contract for sale, casts its refusal to consider the Duty to Inform in even starker terms. The basis for this determination – which Metso completely ignores – was that Metso played a critical role in the design of the AG Mill, and that ArcelorMittal relied on Metso's expertise as a mill designer to achieve its objectives. *See* Cross-Petition, ECF No. 25, ¶¶ 34, 35; Decl., Ex. R, Majority Award ¶¶ 272-79. Given these findings, there was an even more compelling obligation for the Majority to consider whether Metso breached its pre-contractual Duty to Inform. It is logically unsustainable for the Majority to say, on the one hand: 1) that ArcelorMittal concluded a contract of enterprise with Metso whereby it relied on Metso's expertise in designing the AG Mill, 2) but that there was no need to consider whether Metso breached the Duty to Inform ArcelorMittal of "any useful information" in the very design it recommended in connection with that contract.  Contrary to Metso's claims, the Majority consciously and overtly ignored the Duty to Inform.

## CONCLUSION

Under Article 2102, the Duty to Inform constitutes a separate, pre-contractual, statutory basis for liability in relation to Metso's conduct during the negotiations for the Contract, distinct from the legal warranty against latent defects. ArcelorMittal's claim under Article 2102 required the tribunal to determine whether Metso failed to inform ArcelorMittal of any useful information relating to the project prior to entering the Contract, and whether, as ArcelorMittal claimed, that information would have affected the enterprise as a whole, or even resulted in the Contract being avoided entirely.

Because the Majority Award was issued in manifest disregard of the Duty to Inform under Article 2102 and resulted in an erroneous outcome contrary to Québec law, ArcelorMittal respectfully requests that the Court vacate the Majority Award.

---

exceeded its powers," and the "[t]ribunal's reasoning . . . is to do by the back door that which the Convention expressly excludes by the front door").

Dated: New York, New York
June 7, 2019

Respectfully submitted,

HERBERT SMITH FREEHILLS
NEW YORK LLP

By: */s/ Thomas E. Riley*

Thomas E. Riley
A. Robert Dawes
450 Lexington Ave, 14th Floor
New York, New York 10017
Tel: (917) 542-7600
Fax: (917) 542-7601
Thomas.Riley@hsf.com
Robert.Dawes@hsf.com

*Attorneys for Respondents ArcelorMittal Exploitation Minière Canada s.e.n.c. and ArcelorMittal Canada Inc.*

11